# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 1:18mj96 |
| INFORMATION ASSOCIATED WITH FACEBOOK USERname john.berrier.96 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Information associated with the above captioned Facebook account stored at premises owned, maintained, controlled or operated by Facebook, Inc., as further described in Attachment A.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*
Evidence of, instrumentalities used in committing, and fruits of the crimes of 18 U.S.C. §§ 2251(a), 2252A(a)(2)(A), 2422(b), and 1470, as further described in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) | Production of Child Pornography |
| 18 U.S.C. § 2252A(a)(1)(A) | Receipt of Child Pornography |
| 18 U.S.C. § 2422(b) | Enticement |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Tara S. Cataldo, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/30/18

_____
*Judge's signature*

City and state: Greensboro, North Carolina

L. Patrick Auld, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the Facebook username john.berrier.96, which is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California. This warrant is associated with Facebook case number 1623298.

# ATTACHMENT B

## Particular Things to be Seized

## I.    Information to be disclosed by Facebook

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each username listed in Attachment A:

    (a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

    (b)    All mobile device information associated with each user profile, to include telephone number, date of activation and any universally unique identifier (UUID) associated with such devices;

    (c)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

    (d)    All photos uploaded by that username and all photos uploaded by any user that have that user tagged in them;

    (e)    All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall

postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(f) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account with user agent strings;

(i) All records of Facebook searches performed by the account;

(j) The types of service utilized by the user;

(k) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(l) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(m) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

2

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations 18 U.S.C. § § 2251(a), 2252A(a)(1)(a), and 2422(b), by the user(s) of the account, for the username identified on Attachment A, in the form of the following:

(a) records and information constituting or revealing child pornography, as defined in 18 U.S.C. 2256(8);

(b) records and information constituting or revealing child erotica;

(c) records and information revealing communications of a sexual nature with minors or those purporting to be minors and all communication in all forms with any such minors or individuals purporting to be minors and the dissemination of obscene sexual content to minors, or an attempt to commit the same;

(d) records and information revealing sexual activity with or sexual interest in minors, including any action taken to meet a minor for a sexual purpose;

(e) records or information constituting or revealing the receipt, distribution, or production of child pornography, as defined in 18 U.S.C. 2256(8), or an attempt to commit the same;

(f) records and information constituting or revealing personal identifying information or contact information of individuals who were contacted for the purpose of committing violations of the statutes described above;

3

(g) records and information constituting or revealing membership or participation in groups or services that provide or make accessible child pornography or child exploitation content;

(h) records and information revealing accounts with any internet service provider;

(i) records and information revealing the use and identification of remote computing services such as email accounts or cloud storage;

(j) records revealing or indicating who created, used, or communicated with the username described in Attachment A, including records revealing or indicating their whereabouts.

As used above, "child erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions. The term "minor" means any person under the age of 18 years.

4

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Tara S. Cataldo, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with the Facebook username john.berrier.96 that is stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the username listed in Attachment A.

2.     I am a Special Agent of the Federal Bureau of Investigation ("FBI"), and have been since March of 2008. My initial training consisted of a twenty-week FBI new agent course during which I received instruction on various aspects of federal investigations, ranging from economic espionage and child pornography, to kidnapping and computer intrusions. In addition, I have received more than 350 hours of training related to computers and cyber matters, to include investigations of cybercrime. I am currently assigned to the Charlotte

Division and stationed at the Greensboro Resident Agency. Prior to joining the FBI, I worked in law enforcement for over eight years as a police officer and sheriff's investigator. I have been the case agent or supporting agent in numerous investigations, including investigations involving the production, distribution, and possession of child pornography. I have received training in the area of child pornography and child exploitation, and have observed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2252A and 2251, and I am authorized by law to request a search warrant.

3.     The statements in this affidavit are based on my own investigation into this matter as well as on information provided to me by other FBI agents and analysts. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2251(a), 18 U.S.C. § 2252A(a)(1)(A), and 18 U.S.C. § 2422(b) have been committed by the person who uses the aforementioned Facebook ID and there is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

2

# STATUTORY AUTHORITY

5.      This investigation concerns alleged violations relating to the sexual exploitation of minors.

a.      18 U.S.C. § 2251(a) prohibits any person to employ, use, persuade, induce, entice, or coerce any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

b.      18 U.S.C. § 2252A(a)(1)(A) prohibits a person from knowingly receiving, distributing or conspiring to receive or distribute, or attempting to do

3

so, any child pornography or any material that contains child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; and

      c.      18 U.S.C. § 2422(b) prohibits a person from using, or attempting to, use the mail or any facility or means of interstate or foreign commerce, to knowingly, persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so.

## PROBABLE CAUSE

    6.     On April 3, 2017, a relative (Relative-1) of a 13 year old minor female (Minor-1)[1] contacted the FBI in Arkansas and reported that Minor-1 was being enticed into sexual activity by an adult male about 62 years of age residing in North Carolina. In March of 2017, Relative-1 overheard multiple telephone conversations between Minor-1 and an adult male. The conversations included discussions about meeting and having sex. After reporting the enticement to the FBI, Relative-1 conducted a Google search to attempt to identify the adult male. Based on this, Relative-1 believed the individual to be "Barry John" and residing in North Carolina or a teenager from New Mexico.

---

[1] Minor-1 is currently 14 years of age.

4

7.     On April 18, 2017, a package addressed to Minor-1, mailed via the United States Postal Service, arrived at Relative-1's residence and was intercepted by Relative-1. At the time, Minor-1 was staying with Relative-1. The return address written on the package was "Jessica B, 78 W 9th St, Lexington, North Carolina 27295".[2] The package contained multiple items, including boxes of candy and empty water bottles. An Alcatel cell phone was hidden inside one of the boxes of candy. Relative-1 gave the package to the FBI. The cell phone had not been activated.

8.     On May 2, 2017, a package addressed to Minor-1, mailed via the United States Postal Service, arrived at Relative-1's residence and was intercepted by Relative-1. Again, at the time, Minor-1 was staying with Relative-1. The return address was written as follows, "Jessica Berry, 70 W 8th St, Lexington, NC 27295." The package contained multiple items including candy, Jell-O, a Winnie the Pooh bear, and a $10 bill. A Samsung cell phone was hidden in one of the boxes of candy. Relative-1 again gave the package to the FBI. The cell phone had not been activated.

9.     On May 4, 2017, FBI Special Agent Lennie Johnson of the Little Rock Division reviewed Minor-1's Facebook profile and observed that a user with a profile name "Barry John" had posted on Minor-1's Facebook page.

---

[2] Based on my surveillance, I do not believe 78 W 9th St, Lexington, NC 27295 is an actual address.

10. On May 9, 2017, Minor-1 was interviewed by an FBI Child/Adolescent Forensic Interviewer (CAFI). Minor-1 disclosed that she was in contact with a "Jonathan Berrier" from North Carolina via his cell number, (336) 300-9326. She claimed that she had never seen him and that she was friends with his 14-year-old sister Jessica. She disclosed that she also used Facebook to communicate with him and that his Facebook display name is "Barry John." When shown a picture of Jonathan Stacy BERRIER of Lexington, North Carolina, Minor-1 claimed that she did not know who he was.

11. In May of 2017, Minor-1 provided three Gmail addresses that she used to communicate with "Jonathan Berrier." The email addresses were different combinations of Minor-1's first name and "John." On May 18, 2017, SA Johnson logged into the emails via the password Minor-1 provided and reviewed their contents. According to Minor-1, the email addresses were created by "Jonathan Berrier" for them to correspond as both had the email address and password. Minor-1 stated that they didn't use them very much. Minor-1 stated that she mostly communicated with "Jonathan Berrier" via Facebook, telephone conversations, and video chat.

12. On July 5, 2017, Minor-1 was interviewed by Special Agent Johnson. Minor-1 admitted that she lied to the CAFI about her relationship with "Jonathan Berrier" and about not recognizing his picture. She explained that she lied because she was scared. Minor-1 admitted that the individual in the picture

6

shown to her by FBI was the "Jonathan Berrier" she had been referring to and that she had been in contact with BERRIER for five or six months. The following is information provided by Minor-1 during the interview:

a. She first met BERRIER on Facebook Messenger around January 2017.

b. She spoke with BERRIER on his cell phone (336) 300-9326.

c. They talked about meeting up in person.

d. BERRIER would bring up "inappropriate" and "sexual" conversations.

e. They would talk almost every day and would sometimes video chat.

f. BERRIER'S birthday is May 19th.

g. BERRIER lives in Lexington, North Carolina, with his father.

h. BERRIER knew she was 13 years old because Minor-1 told him her true age.

i. BERRIER said he was 36 years old but later admitted he was 49 years old.

j. Because Minor-1 did not have a cell phone, she was using her home telephone and friend's cell phones to communicate with BERRIER. BERRIER attempted to mail her cell phones, but she never received them.

7

k. BERRIER showed her his penis five or six times on FaceTime, Apple's video chat application.

l. BERRIER requested that she send him nude pictures of herself.

m. She sent BERRIER two nude pictures of herself, one of her breasts and one of her vagina.

13. On March 1, 2018, the Davidson County Sheriff's Office provided a copy of a 1999 incident report (report number 99002549). The report alleges that BERRIER sexually assaulted an 8 year old female in 1999 by rubbing her vagina with his hands. As a result of the report, on July 8, 1999, BERRIER was arrested for felony First Degree Statutory Sex Offense and misdemeanor Indecent Liberties. A review of BERRIER'S National Crime Information Center (NCIC) criminal history revealed that BERRIER was convicted of misdemeanor Assault on a Child under 12 (N.C.G.S. § 14-33(c)(3)) on January 9, 2002.

14. On March 1, 2018, a second relative (Relative-2) discovered Minor-1 had a secret Cricket cell phone. Minor-1 refused to say where she got the phone from and refused to give the passcode to access the phone. According to Relative-2, Minor-1 stated, "I don't want you to look at this phone because I contacted that man." Relative-2 understood Minor-1 to be referring to BERRIER. Also recovered from Minor-1 was an expired North Carolina driver's license of "Jonathan Stacey Berrier", issued by the Department of Motor Vehicles on June 18, 1990.

15. On March 9, 2018, I executed a federal search warrant at BERRIER'S residence, 70 West 8th Street, Lexington, North Carolina 27295. BERRIER was not home at the time. A laptop, a LG mobile phone, numerous DVDs, a thumb drive, and a Cricket mobile phone box were seized. These items were subsequently reviewed for evidence. The laptop contained BERRIER'S Facebook username, john.berrier.96. This username had the profile name of "John Berry" which is a variation of what Minor-1 admitted she used to communicate with BERRIER. Facebook profile names can be changed by the user whenever they want to change them, however, the username remains constant. The mobile phone contained clothed pictures of Minor-1.

16. The same day the search warrant was executed, March 9, 2018, I spoke with BERRIER via his cell phone, (336) 300-9326. BERRIER said the FBI wouldn't find anything on his laptop because he only uses it to watch YouTube. He also said the LG mobile phone that was seized from the residence was his previous mobile phone when he used T-Mobile. He now uses Cricket. A Cricket LG mobile phone belonging to BERRIER was seized at BERRIER'S current location in South Carolina.

17. On April 6, 2018, I contacted Facebook and requested the Facebook username john.berrier.96 be preserved pending a search warrant. Facebook complied and issued case number 1623298.

9

18.     On April 20 and 23, 2018, BERRIER spoke with Relative-2 and a third relative of Minor-1's (Relative-3) and stated to both that he was in contact with Minor-1. On April 20, 2018, administrators at Minor-1's school observed that Minor-1 is in email contact with BERRIER via Minor-1's school email address.

19.     On April 25, 2018, BERRIER contacted me via telephone from (336) 300-9326. He asked why I had visited his residence on April 20, 2018. I advised that I would like to talk with him. He asked if the FBI would supply an attorney for him, and I said we do not supply attorneys. He then said he would not talk to me without an attorney present. I advised him to cease all contact with Minor-1 and Minor-1's family. BERRIER said he was worried for Minor-1's safety because she claimed that she was going to run away from home. Further, BERRIER admitted he was in contact with Minor-1, and admitted to contacting Minor-1's relatives.

20.     On or about April 19, 2018, Minor-1 advised Relative-2 that she deliberately became pregnant and wanted to keep the baby but refused to divulge who the father was. On or about that same date, Minor-1 began experiencing a spontaneous miscarriage. The pregnancy and resulting miscarriage were confirmed by medical personnel via blood tests and ultrasounds. On April 26, 2018, Minor-1 told Relative-2 that on March 16, 2018, BERRIER drove his white Tahoe to Arkansas and picked up Minor-1. Minor-1 confessed that she and BERRIER had sexual intercourse. On April 27, 2018, Minor-1 admitted to

10

Relative-2 that BERRIER was the father of the baby that she miscarried. Relative-2 advised that Minor-1 skipped school on March 16, 2018.

21.     BERRIER'S neighbor informed me that BERRIER drive's a white Tahoe. According to the North Carolina Division of Motor Vehicles, BERRIER'S father owns a white GMC Yukon. GMC Yukons and Chevy Tahoes have very similar appearances.

## **FACEBOOK**

22.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

23.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a unique user identification number to each account.

24.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.

11

Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

25. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

26. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.

Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

27. Facebook has a Photos application, where users can upload an unlimited number of albums and photos. Another feature of the Photos application is the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos associated with a user's account will include all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

28. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such

13

comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

29.   If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

30.   Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

31.   Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

32.   Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

14

33. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

34. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

35. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

36. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member,

15

including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

37.     Facebook also retains Internet Protocol ("IP") logs for a given username or IP address.  These logs may contain information about the actions taken by the username or IP address on Facebook, including information about the type of action, the date and time of the action, and the username and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

38.     Facebook also retains User Agent strings associated with each transaction associated with an IP address.  The User Agent is information transmitted by the device being used to browse a web page that identifies the type of device and type of web browser being used. Websites use this information to adjust the way the content is displayed for the device for compatibility and readability purposes.

39.     As of June 2013, Facebook serviced over 1.15 billion active users and more than 819 million use Facebook on a mobile device on a daily basis.  Facebook can be accessed via the internet by visiting http://www.facebook.com or via the free Facebook application that is available for most mobile devices using the Apple iOS mobile operating system (used by Apple iPhones, iPads, and iPod

16

Touch devices) or the Google Android mobile operating system (used by Android phones and tablet devices). Facebook data is stored on servers owned and operated by Facebook and may not be stored directly on a user's computer or mobile device though computer forensic evidence may be present on the device indicating Facebook use.

40. Facebook users can enable specific mobile telephones to access their accounts by logging into their Facebook account and designating the mobile device telephone number to be authorized. Enabling a mobile device allows Facebook to send SMS text message notifications for friend requests, messages, Wall posts, and status updates from friends. Users can also update their status, search for phone numbers, or upload photos and videos from a phone. In order to enable this feature, the user must enter the device telephone number, and receive a confirmation code from Facebook; this code must then be entered via the Facebook account portal on the primary Facebook website for the device to be authorized.

41. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems,

17

billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

42. Information stored in connection with a Facebook account may provide crucial evidence of the "who, what, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. A Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the

chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

43.     Therefore, the account servers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

44.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A)

and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

45.     Because the warrant will be served on Facebook Inc. who will then compile the requested records at a time convenient to Facebook Inc., reasonable cause exists to support execution of the requested warrant at any time day or night.

**CONCLUSION**

Based on the forgoing, I request that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States ... that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

20

Respectfully submitted,

Tara S. Cataldo
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on April 30, 2018.

L. Patrick Auld
UNITED STATES MAGISTRATE JUDGE

21